## HUG v. HINTRAGER et al.

1. **Mechanic's Lien:** SUBCONTRACTOR : MONEY RESERVED FOR PAYMENT OF. Where the principal contractor left in the hands of the owner of the improvement money for the payment of a subcontractor, who in due time filed a mechanic's lien for the amount due him, such lien was rightly established, to the extent of the money so left.

2. ———: ———: DELAY IN FILING CLAIM AND GIVING NOTICE. Where a subcontractor did not file his claim for a mechanic's lien, and give notice thereof to the owner of the improvement, until more than thirty days had elapsed from the date of completing his work, and when he did so the owner was owing the principal contractor nothing, and did not afterwards become indebted to him, *held* that the subcontractor did not secure a lien on the property. (See McClain's Code, sec. 3315.)

3. ———: ———: WHO TO VERIFY STATEMENT. A statement for a mechanic's lien must be verified, but it need not be sworn to by a claimant for the lien (*Lamb v. Hanneman*, 40 Iowa, 41); and in this case *held* that a verification by an employe of the claimants, who transacted the business and knew the facts, was sufficient.

4. ———: ———: TIME OF NOTICE: LAST-ITEM OF ACCOUNT. Where the next to the last item of a subcontractor's account in a statement for a mechanic's lien was October 19, and the last item was November 28, and notice of the filing of the claim was given December 4, and the evidence showed that said last item was furnished to the principal contractor in good faith, the owner of the improvement could not, by returning it on the ground that it was not contemplated in the contract, make the next to the last item the last, and thus avoid the lien. on the ground that the notice was not served within thirty days after the last item, as required by statute.

5. ———: ———: UNWARRANTED PAYMENT TO PRINCIPAL CONTRACTOR. Although the building contract provided that R.'s lumber was to be used, the evidence showed that the owner of the improvement knew, before he paid the principal contractor, that C. was furnishing lumber for the building, and that he would have a right to perfect a lien therefor by complying with the law, which he did within due time. *Held* that the owner paid the principal contractor at his peril, and such payment did not exempt the property from a lien for the lumber furnished by C. ( See *Chicago Lumber Co. v. Woodside,* 71 Iowa, 359.)

*Appeal from Dubuque District Court.*—HON. JOHN J. NEY, Judge.

FILED, MAY 59, 1890.

ACTION to foreclose a mechanic's lien against the property of defendant Hintrager. Under date of October 17, 1885, the defendant Hintrager and J. B. Needham entered into an agreement in writing, whereby said Needham contracted to furnish all the material for and to erect on lot 1, of subdivision of out-lot 724, in the city of Dubuque, a double, brick dwelling-house, kitchens, cisterns, privies, wood-sheds, fences, etc., completed as per plans and specifications of F. D. Hide, the cost not to exceed twenty-five hundred dollars. It was provided that no claim for extra work or material would be made unless the items and prices were indorsed on the contract, and that the improvements would be completed, and keys delivered to the owner, " on or before the fifteenth day of September, 1885, under a penalty of a forfeiture of three dollars for each day of delay by the contractors, in favor of the owner." The only provision as to manner of payment was that one hundred dollars was payable in orders for lime, and that the owner should be allowed $4.70 per one thousand, yard count, for brick furnished. No time of payment was fixed. September 19, 1885, the parties added to this a supplement, substituting brick for plank sidewalk, $15.77 ; waiving all claims theretofore made for excavation from under the building ; providing for further excavation by the contractor free of charge, and for the payment of twenty-five cents per yard by Hintrager to

the contractor for excavating from an adjoining lot. Certain credits were allowed to Hintrager in this supplement, and it was provided therein: "The whole job to be completed on or before the fifteenth day of October, 1885." About October 15, 1885, these parties entered into another agreement, by which Needham was to furnish all the material for and erect a retaining wall on said lot for $144.05. The plaintiff claims a lien on the said lot 1 for material furnished for said wall, and defendants T. J. Donahue, J. S. Randall, and Carr, Ryder & Wheeler, each claim a lien for labor or materials furnished for the erection of said dwelling and other improvements provided for in the first contract. Judgments were entered in favor of each of these parties, and against J. B. Needham; also a decree establishing and foreclosing liens against said lot 1 in favor of Joseph Hug, J. S. Randall, and Carr, Ryder & Wheeler, from which decree defendant Hintrager appeals. The cross-petitions of T. J. Donahue and John Gonnica, for the establishment of liens in their favor, were dismissed, and T. J. Donahue appeals. Further facts material to the points discussed will be noticed in connection with the consideration of the respective claims.

*Powers & Lacy*, for appellant Hintrager.

*McCeney & O'Donnell*, for appellant T. J. Donahue.

*Henry Michel*, for Joseph Hug.

*McNulty & Barnes*, for J. S. Randall.

*Fouke & Lyon*, for Carr, Ryder & Wheeler.

GIVEN, J.—I. As to plaintiff's claim, it appears that Needham, having contracted to furnish the material and erect the retaining wall, sublet to John Coogan, who contracted with plaintiff to furnish the stone. Plaintiff furnished stone between October 13 and November 12, 1885, that went into the wall, amounting to sixty-five dollars. On November 20, following, the

1. MECHANIC'S lien: subcontractor: money reserved for payment of.

plaintiff filed his statement for a lien, and served notice thereof on Hintrager. Plaintiff alleges that on settlement with Needham and Coogan for the wall, sixty-five dollars was left in Hintrager's hands to be paid to him for the rock furnished. Hintrager claims that Needham was to furnish the rock from his own quarry, and that, supposing that he had done so, and before he had any knowledge to the contrary, he paid Needham and Coogan, on Needham's order, in full for the wall. While there is some conflict in the testimony on these points, we think it fairly sustains the conclusion that Hintrager knew that plaintiff had furnished the rock before he made the payment of $79.05, November 16, and that that amount was paid, leaving sixty-five dollars in his hands to be paid to the plaintiff. The one hundred dollars paid October 31, on account of painting and stone-mason work, etc., is not shown to relate to this stonework, and is fully explained by the house contract. Some questions are made as to the sufficiency of the statement filed, but, in view of what we have just stated, the questions are immaterial as between plaintiff and Hintrager, as owner of the real estate sought to be charged. The judgment and decree of the district court, in favor of plaintiff, should be affirmed.

II. There is no question but that the defendant Donahue furnished the material and did stonework in the erection of the dwelling-house, to the amount of $359.86, of which but thirty dollars has been paid. Nor is it questioned but that Hintrager knew that he was furnishing the material and doing the work; indeed, it is provided in the contract that "stone-mason work to be done by Thomas J. Donahue." Donahue completed his work on July 15, 1885, and on October 14 filed his statement for a lien, and gave notice thereof to Hintrager. As the statement was not filed and notice given within thirty days from the completion of the work, Hintrager had a right to pay the contractor without regard to the lien of the subcontractor. McClain's Code, sec. 3315. If, at the

2. ——:——: delay in filing claim and giving notice.

time the statement was filed and notice served, there was money due, or to become due, from Hintrager to Needham under the contract, the lien would attach for the amount due, or to become due, to the contractor, not to exceed the amount due to the subcontractor. As already stated, the written contract is silent as to the time of payment, but the parties thereto seem to have agreed that Hintrager would pay according to the contract price, as the work progressed, in pursuance of which he paid Needham fifteen hundred dollars, October 13, and two hundred dollars cash on the day the statement was filed and notice given. Needham not only failed to complete the work, but entirely abandoned it about November 23. Without stating the items in detail, we may say that it satisfactorily appears that on October 14, 1885, Hintrager was not indebted to Needham on the contract, nor did he thereafter become so indebted. It follows, therefore, that defendant Donahue did not acquire any lien against the property of Hintrager, by virtue of his statement and notice. The decree of the district court as to defendant Donahue is affirmed on his appeal.

III.   Carr, Ryder & Wheeler furnished lumber, etc., under contract with Needham, for the buildings and other improvements made under the first contract and supplement, to the amount of $387.43, the last item of which is stated as having been furnished November 28, 1885, the last preceding item having been furnished October 19. On November 30, 1885, Carr, Ryder & Wheeler filed their statement, claiming a mechanic's lien, verified by E. A. Engler ; and on December 4, 1885, served notice thereof on appellant Hintrager. They aver that Hintrager knew that they were furnishing said materials at the time they were delivered, and at the times he made payments to Needham. Appellant Hintrager objects to the sufficiency of the statement for a lien, on the ground that it was not verified by any member of the firm. E. A. Engler was an employe of the firm, having authority to

3. ——:——:
who to verify
statement.

make contracts for them. He made the contract with Needham under which this material was furnished, and had personal knowledge of the whole transaction, including the fact of the delivery of the materials. The Code requires that the statement shall be verified by affidavit, but does not provide that such affidavit shall be by a claimant for the lien. McClain's Code, sec. 3314; *Lamb v. Hanneman*, 40 Iowa, 41.

The last item, furnished November 28, "One p. c. blind, one dollar," was delivered to Needham at the house, and, after Needham abandoned the work, Hintrager sent the blind back to Carr, Ryder & Wheeler. Hintrager contends that this blind was not called for under the contract with Needham, and that it had been furnished for the purpose of extending the account, so that Carr, Ryder & Wheeler could file their lien and give notice, within thirty days thereafter; that the last preceding item was more than thirty days prior to the filing of their statement, and giving notice thereof; and that said blind never went into the building. We think the weight of the testimony sustains the conclusions that the blind was furnished in good faith, to be used in the building, and that appellant Hintrager could not defeat the right of Carr, Ryder & Wheeler to a lien, by returning the blind. This item was evidently a continuation of the same account, and entitled Carr, Ryder & Wheeler to a lien for all the items, by filing their statement and giving notice thereof within thirty days from the date of said last item.

4. ——: ——: time of notice: last item of account.

While it is true the contract with Needham states that "Randall's lumber is to be used," we are satisfied, from the testimony, that Mr. Hintrager knew that material was being furnished by Carr, Ryder & Wheeler before he made the payment of fifteen hundred dollars, October 6, 1885. The case is within the rule laid down in *Lumber Co. v. Woodside*, 71 Iowa, 359. Carr, Ryder & Wheeler, having filed their statement, and given notice

5. ——: ——: unwarranted payment to principal contractor.

thereof, within thirty day, and Hintrager having knowledge of their right to perfect such a lien at the time he made the payment of fifteen hundred dollars to Needham, he must be held to have made the payment at his own risk, and subject to the right of Carr, Ryder & Wheeler to assert their lien. This view of the case renders it unnecessary that we determine whether Needham was entitled, on an accounting with Hintrager, to an allowance for excavating as extra. There is no dispute as to Hintrager's statement of the account, as it stood between him and Needham, excepting as to this allowance of extras for excavating; but, even that allowance would not equal the balance due to Hintrager from Needham for payments made and expenses incurred in completing the work. As Carr, Ryder & Wheeler's right to a lien does not depend upon whether Hintrager was indebted to Needham, we need not further inquire as to that subject.

IV. J. S. Randall furnished material for the house and other improvements, under contract with Needham, to the amount of $354.85, for which he filed a statement, duly verified, claiming a mechanic's lien, on November 28, 1885, being within thirty days from the last item. Randall's right to the lien involves the same question as those presented on the claim of Carr, Ryder & Wheeler. It follows from our conclusions that Randall is entitled to have his lien established. Our conclusions upon the whole record are that the judgments and decrees of the district court should be

AFFIRMED.